UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Matthew David Bettridge,

Plaintiff,

v.

Sean Deringer, *in his official capacity as the Wright County Sheriff*,

Defendant.

File No. 26-cv-01254 (ECT/ECW)

**OPINION AND ORDER**

---

Bradford W. Colbert, Legal Assistance to Minnesota Prisoners, Mitchell Hamline School of Law, St. Paul, MN, for Plaintiff Matthew David Bettridge.

Ashley Marie Ramstad and Stephanie A. Angolkar, Iverson Reuvers, Bloomington, MN, for Defendant Sean Deringer.

---

The Wright County Jail[1] charged Matthew Bettridge a fee[2] for his confinement. Bettridge is indigent and alleges that the County failed to consider his indigence when it assessed the fee. Bettridge claims the County's actions violated the federal and Minnesota Constitutions and a Minnesota statute. He seeks damages, a declaration that the County's policies are unconstitutional, and a permanent injunction prohibiting the County from

---

[1] Bettridge brings this suit against Wright County Sheriff Sean Deringer in his official capacity. "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, Defendant Deringer is referred to as "the County" throughout.

[2] These fees are known as "pay to stay" fees. *See In re Milan*, 556 B.R. 922 (B.A.P. 8th Cir. 2016) (referring to the fees as such).

collecting the fee. The County has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and the motion will be granted. Bettridge's federal claims will be dismissed with prejudice because he has failed to state a plausible claim for relief, and his state-law claims will be remanded.

I

Bettridge was arrested in October 2021 and was subsequently held at the Wright County Jail. Am. Compl. [ECF No. 1] ¶ 6. He pled guilty to a felony firearm offense. *Id.* ¶ 10. Bettridge is indigent and "was unable to make bail, so he remained incarcerated in Wright County Jail until his sentencing" in March 2022, after which he was transferred to the Rush City Correctional Facility. *Id.* ¶¶ 7–8, 10–11.[3] After his transfer, Bettridge "received an invoice in the amount of $3,163 from Wright Country [sic]," charged pursuant to Minn. Stat. § 641.12.[4] *Id.* ¶ 11. Bettridge then "sought a waiver of the fees and submitted

---

[3] Page citations are to the pagination assigned by the court's CM/ECF system appearing in a document's upper right corner, not to a document's original pagination.

[4] Minn. Stat. § 641.12, subdiv. 3(a) reads in relevant part "[a] county board may require that a person convicted of a crime and confined in the county jail . . . pay the cost of the person's room, board, clothing, medical, dental, and other correctional services." The statute authorizes the "use [of] any available civil means of debt collection in collecting costs." Minn. Stat. § 641.12, subdiv. 3(a). The statute also contains a provision stating that payment "shall" be waived

> if the officer or sheriff determines that the person does not have the ability to pay the costs, payment of the costs would create undue hardship for the person or the person's immediate family, the prospects for payment are poor, or there are extenuating circumstances justifying waiver of the costs.

Minn. Stat. § 641.12, subdiv. 3(b).

an ability-to-pay questionnaire in support of his request for a waiver." *Id.* ¶ 12; ECF No. 20-1 at 6–8. On the ability-to-pay questionnaire, Bettridge wrote that his "assets totaled $358" and that "he was earning an hourly income of 50 cents through Chemical Dependency Treatment." Am. Compl. ¶ 12; ECF No. 20-1 at 6–7. The County denied Bettridge's waiver request. Am. Compl. ¶ 13; ECF No. 20-2. Bettridge explains that "[t]he imposition and continued existence of the . . . debt caused [him] significant stress and anxiety." Am. Compl. ¶ 14. He suffered from "ongoing worry about his inability to satisfy the debt, uncertainty about potential collection action upon his release, and concern about the debt's effect on financial stability and ability to reintegrate into the community." *Id.*

Bettridge filed this lawsuit in Minnesota state court [ECF No. 1-1], and the County removed the suit to this court [ECF No. 1]. Bettridge alleges that it is the County's "standard practice and custom . . . to assess and collect confinement fees under Minn. Stat. § 641.12 without conducting a meaningful inquiry into a confined person's ability to pay prior to imposing the fee." Am. Compl. ¶ 15. Bettridge further alleges that the County has a "practice and custom of . . . deny[ing] requests for waiver of confinement fees without conducting a genuine assessment of the person's financial circumstances." *Id.* ¶ 16. Bettridge claims that the fee is an excessive fine and that its imposition violates the equal protection, substantive due process, and procedural due process protections of the Minnesota and United States Constitutions. *Id.* at 4–6. Bettridge also alleges that the County violated Minn. Stat. § 641.12, which "requires waiver of confinement fees when a person lacks the ability to pay." *Id.* at 5. These are official-capacity claims, Am. Compl. at 1, ¶ 3, brought under *Monell*, *see Hoel v. Prouse*, No. 25-cv-2342 (ECT/LIB), 2025 WL

3033945, at *5 (D. Minn. Oct. 30, 2025) (explaining that a municipality may be held liable "under § 1983 for monetary, declaratory, or injunctive relief" if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or if the municipality acted unconstitutionally with respect to its "custom" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).

Bettridge seeks retrospective and prospective relief. He requests "a permanent injunction prohibiting further attempts [by the County] to collect the $3,163 assessment" and "compensatory damages for the stress, hardship, and financial harm caused by the unlawful imposition of the $3,163 confinement fee, and nominal damages . . . in the event compensatory damages cannot be established." Am. Compl. at 6. Bettridge also seeks a declaration that "[the County's] policies are unconstitutional under the Minnesota and United States Constitutions." *Id.* Bettridge further requests "the return of any collected funds," a declaration that "Defendant's procedures violate Minn. Stat. § 641.12," "reasonable attorney's fees and costs," and "all other just and equitable relief." *Id.* Bettridge does not allege that he has paid the fee or that payment has otherwise been collected. *See* Am. Compl.

II

Begin with issues of standing. Article III of the Constitution limits the federal judicial power (or jurisdiction) to adjudicating "Cases" and "Controversies." The general rules governing Article III standing are settled:

> Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. Therefore, the plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth* [*v. Seldin*, 422 U.S. 490, 498 (1975)]. To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

*Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). An injury-in-fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified).

Standing "must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) (citation modified); *Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1019 (8th Cir. 2025) (per curiam). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC*, 568 U.S. at 91 (citation modified). A case may be mooted by a defendant's voluntary conduct only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

The County argues that Bettridge lacks standing and that his claims are moot because the fees he contests "were never collected or sent to collections" and because "the

County . . . subsequently canceled [Bettridge's] invoice and fees." ECF. No. 24 at 10, 13. The County also argues that Bettridge's claim "that the County did not conduct a meaningful ability-to-pay assessment before invoicing for fees" is moot because the County revised its fee waiver procedures. *Id.* at 13–14. Finally, the County contends that Bettridge fails to establish standing because Bettridge's allegations of emotional harm are "conclusory." *Id.* at 10–12; ECF No. 32 at 5–6.

Begin with the County's fee-cancellation and procedure-revision arguments. Whether construed as standing or mootness issues, the facts supporting these arguments are not alleged or referenced in Bettridge's Amended Complaint. *See* Am. Compl. And considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). When, however, the relevant materials are "necessarily embraced" by the pleadings, this transformation does not occur. *Id.* The pertinent question is, therefore, whether the County's fee cancellation and procedure revision are "necessarily embraced" by the pleadings. I conclude that they are not.

Materials embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (quoting *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly*

*Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

Here, the County attached several documents to its answer, including Bettridge's ability-to-pay questionnaire and the County's waiver denial [ECF Nos. 20-1–20-2], as well as documents demonstrating that the County waived Bettridge's invoice and fees [ECF No. 20-3] and revised its ability-to-pay procedures [ECF Nos. 20-9–20-11]. I conclude that Bettridge's ability-to-pay questionnaire [ECF No. 20-1] and waiver denial [ECF No. 20-2] are both "embraced" by the Amended Complaint because the pleading includes allegations referencing these materials and the events associated with them. *See* Am. Compl. ¶¶ 12–13 (detailing that Bettridge "sought a waiver of the fees and submitted an ability-to-pay questionnaire" and that the County "denied [Bettridge's] request for a waiver"). Because the questionnaire and waiver denial are embraced by the Complaint, these documents may be properly considered in the Rule 12(c) determination to the extent they are relevant. The County's fee cancellation and procedure revision, however, are not embraced by the Amended Complaint; they are not mentioned in the pleading and, while these materials may be relevant to defenses the County wishes to assert, they are not relevant to Bettridge's claims. *See* Am. Compl. This evidence will not be considered in the Rule 12(c) determination.[5] The County has therefore not shown that Bettridge lacks standing (or that Bettridge's claims are moot) due to the fee cancellation and procedure revision.

---

[5] Even if I considered the documents, the general rule is that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89 (1982). When cessation is voluntary, "[a] case might become moot if subsequent events

Turn to the County's argument that Bettridge's emotional harm "does not establish an injury-in-fact to create standing." ECF No. 24 at 10. The Eighth Circuit has examined whether emotional harm is sufficiently concrete to constitute an injury for standing. *See Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 943 (8th Cir. 2024); *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022). In *Hekel*, a plaintiff received a collection letter and claimed the letter caused emotional injury, including "confus[ion]," "worry," and "sleeplessness." *Hekel*, 118 F.4th at 941, 943. The Eighth Circuit considered whether emotional harm "suffice[s] for Article III purposes," *id.* at 943 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 n.7 (2021)), and explained that

> [i]n *Ojogwu v. Rodenburg Law Firm*, we concluded that being in a "state of confusion is not itself an injury," and "nervousness, restlessness, irritability, amongst other negative emotions" are not either. 26 F.4th at 463 (first quoting *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) and then quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020)). [Plaintiff's] complaint substitutes some words—"sleeplessness" for "restlessness" and "worry" for "nervousness"—but the "negative emotions" they describe are basically the same. *Id.* at 463. And under *Ojogwu*, none gives rise to standing. *Id.*; *see also Liberty Mut. Ins. Co. v. Elgin Warehouse & Equip.*, 4 F.3d 567, 571 (8th Cir. 1993) ("In this circuit[,] only an en banc court may overrule a panel decision . . .").

---

ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021) (alterations in original) (quoting *Friends of the Earth*, *Inc.*, 528 U.S. at 189). "The burden of showing that the challenged conduct is unlikely to recur rests on the party asserting mootness." *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012). This burden is "formidable." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth*, 528 U.S. at 190). The materials the County submitted regarding this issue do not on their face meet this formidable burden.

*Id.* at 943. The Eighth Circuit then concluded that, "even if emotional injuries counted, [Plaintiff's] conclusory allegations would not." *Id.* (citation modified). The court explained that plaintiff's allegations of confusion, worry, and sleeplessness were "naked assertion[s] of emotional harm, devoid of further factual enhancement." *Id.* (citing *Auer v. TransUnion, LLC*, 902 F.3d 873, 878 (8th Cir. 2018)). The court further opined that "[w]ithout supporting facts, [the assertions] are just labels that fall short of plausibly establishing injury." *Id.* (citation modified).

Here, as in *Hekel*, "even if emotional injuries counted," Bettridge has failed to allege facts demonstrating that he suffered an emotional injury. Bettridge claims that the debt caused "significant stress and anxiety," "ongoing worry about his inability to satisfy the debt, uncertainty about potential collection action upon his release, and concern about the debt's effect on financial stability" and reintegration. Am. Compl. ¶ 14. But these allegations are conclusory. Without "supporting facts," Bettridge has not "plausibly establish[ed] injury." *Hekel*, 118 F.4th at 943 (quoting *Auer*, 902 F.3d at 878).

Although Bettridge has not sufficiently alleged an emotional injury, he has plausibly alleged an injury in the form of his unpaid debt. *See* Am. Compl. ¶ 11 ("Plaintiff received an invoice in the amount of $3,163. . . ."). After he received the fee invoice, injury through either payment or collection action was imminent. *See Lujan*, 504 U.S. at 560 (explaining that an injury-in-fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" (citation modified)). Bettridge therefore has standing to seek retrospective relief, which includes

the "permanent injunction prohibiting further attempts [by Wright County] to collect the $3,163 assessment" and damages associated with this injury. Am. Compl. at 6.

Finally, Bettridge seeks prospective relief in the form of a declaration that "Defendant's policies [are] unconstitutional under the Minnesota and United States Constitutions." *Id.* A plaintiff requesting prospective relief must show that he is likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03 (1983). "In future injury cases, the plaintiff must demonstrate that the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (citation modified); *see Lujan*, 504 U.S. at 564 n.2 ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." (citation modified)). "Allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). And when a plaintiff seeks forward-looking declaratory or injunctive relief, "past injuries are relevant only for their predictive value." *Murthy v. Missouri*, 603 U.S. 43, 59 (2024). In other words, past injuries do not by themselves show a plaintiff's standing to seek prospective relief, but they may "serve as evidence of threatened future injury." *Id.*; *see Smook v. Minnehaha County*, 457 F.3d 806, 816 (8th Cir 2006) ("It is well settled that '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96

(1974))). Bettridge has alleged no facts indicating that he is likely to receive another invoice soon or in the foreseeable future. *See* Am. Compl. Bettridge therefore does not have standing with respect to his prospective declaratory relief claim.

III

A

Moving to the merits, a Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

B

1

Bettridge claims the fee constitutes an excessive fine in violation of the Eighth Amendment. Am. Compl. at 5. The Eighth Amendment declares that "[e]xcessive bail

shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The "nor excessive fines imposed" mandate "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Timbs v. Indiana*, 586 U.S. 146, 151 (2019) (quoting *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998)). The Eighth Amendment "is addressed to bail, fines, and punishments, and [Supreme Court] cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262 (1989).

The County argues that the fee is not a punishment and is therefore not a fine under the Eighth Amendment. ECF No. 24 at 16–18 (citing *In re Milan*, 556 B.R. 922, 924 (B.A.P. 8th Cir. 2016); *Tillman v. Lebanon Co. Corr. Facility*, 221 F.3d 410 (3d Cir. 2000)). Bettridge contends that the fee is a punishment and constitutes a "fine" because only "convicted inmates" are subject to the fee. ECF No. 29 at 19–20.

The Eighth Circuit has considered similar confinement fees in nonprecedential decisions and has determined that these fees are not punitive. *See Walters v. Kautzky*, 187 F.3d 645 (8th Cir. 1999) (unpublished table decision) (agreeing with the district court that an Iowa pay-to-stay fee was not an ex post facto law where "it did not impose additional punishment for past criminal acts" and "was collected to defray Iowa's costs for incarceration," rather than for punitive purposes); *Blaise v. McKinney*, 187 F.3d 640 (8th Cir. 1999) (unpublished table decision) (determining that an Iowa pay-to-stay and incarceration fee was not an excessive fine under the Eighth Amendment "[a]bsent a showing that [the pay-to-stay statute] was enacted for punitive purposes"). *Cf. In re Milan*,

556 B.R. at 924–25 (noting that Minnesota's confinement fee statute is housed in the civil administrative code and stating that the decisions of "whether to impose the Incarceration Costs, and in what amount, are left to the discretion of the correction agency; and these charges may be waived if it would constitute an undue hardship on an inmate or the inmate's immediately family" (citing Minn. Stat. § 641.12, subdiv. 3(b))). And the Third Circuit considered an Eighth Amendment challenge to confinement fees in *Tillman v. Lebanon Co.* The *Tillman* court held that a daily charge intended to cover prisoner housing expenses was not an excessive fine. *Tillman*, 221 F.3d at 414, 420–21. The court noted that a failure to pay the fee would not result in incarceration, explained that the "fees do not vary with the gravity of the offense," and found it significant that the fee "merely represent[ed] partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." *Id.* at 420. The Third Circuit further concluded that, even if there was a factual question as to whether the fees constituted "fines," the fees were not excessive, and plaintiffs' Eighth Amendment claim would fail on that basis. *Id.*

Here, although application of the Minnesota statute is limited to convicted inmates, the fee is housed in the civil administrative code, is intended to "pay the cost of the person's room, board, clothing, medical, dental, and other correctional services," and may be enforced through "any available civil means of debt collection." Minn. Stat. § 641.12, subdiv. 3(a). As with the *Tillman* fees, the Minnesota fees appear to be charged for daily maintenance. The fee is not a punishment and is therefore not a "fine" under the Eighth Amendment.

Further, as in *Tillman*, even if the fee constituted a "fine" under the Eighth Amendment, Bettridge's claim would still fail, as he has not sufficiently alleged that the fee is excessive. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). A fine is "excessive" "if it is grossly disproportional to the gravity of a defendant's offense." *Id.* In *Bajakajian*, the Supreme Court considered the penalties available for the offense committed, including the length of the sentence and maximum fine, as well as the parties harmed by the criminal act, when examining a fine's excessiveness under the Eighth Amendment. 524 U.S. at 337–339; *see also Tillman*, 221 F.3d at 420–21 (holding that the pay-to-stay fee at issue was not excessive and stating that "[h]ere, the plaintiff accumulated [pay-to-stay] debt of roughly $4,000.00" and that "[i]t can hardly be said that a sum that is less than one-twentieth the legally permissible fine is grossly disproportional to the gravity of the defendant's offense" (citation modified)).

Here, Bettridge claims the fee is "grossly disproportional" because the County failed to consider his indigent status and because the fee "consumes the limited funds of a person who cannot pay it." ECF No. 29 at 20. But the relevant question in the Eighth Amendment analysis is not whether the County followed the proper procedure or whether the individual fined is indigent. The question is whether the fee is proportional to one's *offense*. While Bettridge explains that he was convicted of "felony possession of a firearm" and that he was "committed to the custody of the Commissioner of Corrections" and describes his bail, he does not discuss the punishment imposed in any detail or the harm caused to others as

a result of his offense, nor does he tie the Eighth Amendment excessive fines violation to his offense. Am. Compl. ¶¶ 8–10. Bettridge has not plausibly stated an excessive-fines claim.

2

Bettridge claims that the County's fee policy violates equal protection. Am. Compl. at 5. "The Equal Protection Clause of the Fourteenth Amendment commands that no [s]tate shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The "first step" when evaluating an equal-protection claim is to decide "whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959 (8th Cir. 2019) (quoting *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018)). "The Supreme Court has made clear that disparate impact alone is insufficient to show an equal protection violation; instead, proof of discriminatory intent or purpose is required." *United States v. Ronning*, 6 F.4th 851, 853 (8th Cir. 2021) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Washington v. Davis*, 426 U.S. 229 (1976); *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003); *United States v. Farmer*. 73 F.3d 836, 841 (8th Cir. 1996)).

Once a plaintiff demonstrates that he has been treated differently than others who were similarly situated, the next step is to apply the appropriate level of scrutiny to the challenged law. *See True v. Nebraska*, 612 F.3d 676, 683–84 (8th Cir. 2010). The rational

basis standard applies in the absence of a suspect or quasi-suspect classification. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). Under the rational basis standard, a challenged state law will be upheld so long as it is "rationally related to a legitimate government interest." *Id.* Courts may conduct the rational basis inquiry at the motion to dismiss stage, *see id.* at 1019–20; *Gilmore v. Cnty. of Douglas*, 406 F.3d 935, 938 (8th Cir. 2005), and to prevail, a plaintiff's allegations must plausibly show that no "reasonably conceivable state of facts" could support the challenged law, *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

Bettridge fails to state an equal protection claim for two reasons. First, Bettridge alleges that "[the County's] fee policies discriminate on the basis of wealth, burdening indigent detainees while those who can post bail pay nothing." Am. Compl. at 5. But Bettridge has not demonstrated that he was treated differently than others similarly situated. While Bettridge claims that the fee policies discriminate on the basis of wealth, the fee statute applies equally to all convicted inmates, regardless of wealth status. And Bettridge does not allege facts suggesting any intentional discrimination by the County. *See* Am. Compl. Although indigent prisoners may ultimately pay more in fees than non-indigent prisoners due to their inability to post bail, disparate impact alone does not establish an equal protection violation. *See Ronning*, 6 F.4th at 853.

Second, even if Bettridge had identified a group of similarly-situated individuals treated differently, he has not alleged facts demonstrating that the County's fee policy "lacks any rational relationship to a legitimate governmental purpose." Am. Compl. at 5. To the contrary, the fee policy was enacted pursuant to Minn. Stat. § 641.12, subdiv. 3,

which authorizes counties to collect fees to pay costs associated with housing inmates. Collecting fees from inmates appears to be rationally related to the County's interest in paying for costs associated with housing these inmates. *See Tillman*, 221 F.3d at 423 (holding that a pay-to-stay policy was rationally related to a legitimate government interest where the statute was "designed to teach fiscal responsibility to inmates" and "[a]nother conceivable purpose is to reimburse the state for the expenses of incarceration").[6]

3

Bettridge claims that the County violated his substantive due process rights when it "deemed [him] able to pay despite clear evidence of indigence." Am. Compl. at 5–6. As the Eighth Circuit has explained:

> In addition to its procedural protections, the Due Process Clause protects individual liberties from government action "regardless of the fairness of the procedures used to implement

---

[6] Plaintiffs rely on *Bearden v. Georgia*, 461 U.S. 660 (1983) to support their equal-protection argument, but *Bearden* is inapt. *Bearden* concerned an indigent inmate whose parole was revoked when he was unable to make restitution payments required as a condition of his probation. *Bearden*, 461 U.S. at 663–64. The Court considered "whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution." *Id.* at 665. In *Bearden*, "there [was] no doubt that the State ha[d] treated the petitioner differently from a person who did not fail to pay the imposed fine and therefore did not violate probation." *Id.* at 665. The Court opined that "[b]y sentencing petitioner to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders, the court automatically turned a fine into a prison sentence." *Id.* at 674. *Bearden* was fundamentally about a restraint on an indigent defendant's liberty, whereas here, Bettridge's liberty is not at risk. Bettridge challenges a fee statute that applies equally to all those who are convicted and "confined in the county jail." *See* Minn. Stat. § 641.12, subdiv. 3(a). A defendant's failure to pay a fee assessed pursuant to the statute can result only in civil debt collection. *See* Minn. Stat. § 641.12, subdiv. 3(a) (authorizing the use of "any available civil means of debt collection in collecting costs").

> them." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (internal quotation marks omitted). To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience. *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013). Whether conduct shocks the conscience is a question of law. *Id.* Conscience shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted). "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Folkerts*, 707 F.3d at 981 (cleaned up).

*Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020). A fundamental right is one that is "objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977)).

Bettridge does not allege facts plausibly demonstrating the violation of a fundamental right or conscience-shocking conduct. He alleges no facts addressing whether he has a fundamental right to be free from confinement fees, nor does he identify another right deeply rooted in the Nation's history and tradition. *See* Am. Compl. Bettridge also fails to address or identify how a violation of this asserted right might amount to conscience-shocking conduct. *See id.* Bettridge does not state a plausible substantive due process claim.

4

Bettridge claims that the County violated the Fourteenth Amendment's procedural due process protections when it "imposed fees before conducting any meaningful ability-

to-pay assessment." *Id.* at 6. To succeed on a procedural due process claim, Bettridge must demonstrate: "(1) the existence of a constitutionally protected liberty or property interest; and (2) that the defendant deprived him of that interest without constitutionally adequate process." *Raymond v. Bd. of Regents of Univ. of Minn.*, 140 F. Supp. 3d 807, 815 (D. Minn. 2015) (citations omitted). If a plaintiff cannot identify any protected liberty or property interest of which he was deprived, "any procedural due process claim necessarily fails." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012); *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (explaining that courts do not consider what process is due unless a plaintiff has a protected liberty or property interest).

While Bettridge has a protected property interest in his money, the problem here is that Bettridge alleges his property interest is the "assess[ment of] confinement fees" [ECF No. 29 at 22] or his enforceable debt, Rough Tr. But Bettridge cites no cases standing for the proposition that indebtedness or its enforcement constitutes a property interest. *See* ECF No. 29 at 22. And, assuming that Bettridge's property interest is his money and not his indebtedness, the mere receipt of an invoice does not constitute a property deprivation. The invoice notified Bettridge of his obligation to pay the fee. *Cf. Radenberg v. Lincoln County*, No. 4:21-CV-04062, 2021 WL 2314851, at *2 (D.S.D. June 7, 2021) (determining, when screening a complaint pursuant to 28 U.S.C. § 1915A, that "[plaintiff's] Due Process claim under the Fourteenth Amendment fails because [the county] has not deprived [plaintiff] of property by sending him an invoice — the invoice is notice to [plaintiff] that he owes a confinement fee"). Bettridge does not allege that he actually paid the fee, *see* Am. Compl., and Bettridge has therefore not yet been deprived of his property. The

County's fee waiver procedures and subsequent events, including this litigation, constitute ongoing opportunities for Bettridge "to contest the fee" before deprivation. *See id.* at 6. Bettridge therefore does not allege a plausible procedural due process claim.

IV

Having concluded that Bettridge fails to state a claim for relief under federal law, only Bettridge's state-law claims remain, including his claims under the Minnesota Constitution. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial. *See Hervey v. County of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008). Thus, supplemental jurisdiction over Bettridge's state-law claims will not be exercised here, and Bettridge's state-law claims will be remanded.[7] *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014).

---

[7] The County requests attorney's fees [ECF No. 34] pursuant to 28 U.S.C. § 1447(c), which states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." This request does not fit the removal-fee-shifting statute's text. The County's fees and costs resulted

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Sean Deringer's Motion for Judgment on the Pleadings [ECF No. 21] is **GRANTED**;

2. Plaintiff Matthew Bettridge's federal claims, Counts 6–9, are **DISMISSED WITH PREJUDICE**; and

3. Plaintiff Matthew Bettridge's state-law claims, Counts 1–5, are **REMANDED** to Wright County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 13, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court

---

from the need to seek judgment on the pleadings against Betteridge's claims, not "as a result of the removal."